UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL GLEISSNER,

                      Plaintiff,

        – against –

AIR CHINA AIRLINES LIMITED,

                      Defendant.

**OPINION & ORDER**

15 Civ. 9162 (ER)

Ramos, D.J.:

      Michael Gleissner brings this breach of contract action against Air China Airlines Limited ("Air China"), alleging that Air China wrongly refused to let his family's nanny, Wyn Lanosa, board a flight. Air China moves to dismiss on grounds that the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). In the alternative, Air China moves for summary judgment. For the reasons set forth below, Air China's motion to dismiss is DENIED, but Air China's motion for summary judgment is GRANTED.

**I.    BACKGROUND**

      Air China is an airline company incorporated under the laws of the People's Republic of China with its principal place of business in Beijing, People's Republic of China. Pl.'s Responses to Def.'s 56.1 Statement of Facts ¶ 2. On August 27, 2015, Gleissner, his family members, and Lanosa tried to check in for a flight operated by Air China departing from Barcelona, Spain to Vienna, Austria. Pl.'s Responses to Def.'s 56.1 Statement of Facts ¶¶ 1, 6. At the check-in counter, Air China staff refused to issue Lanosa a boarding pass on the grounds

that she lacked a valid visa to enter Austria. Pl.'s Responses to Def.'s 56.1 Statement of Facts ¶ 11; Shi Jie Decl. ¶¶ 4–5. At the time Lanosa tried to check in to the Air China flight, she possessed a single-entry visa for the Schengen Area.[1] Pl.'s Responses to Def.'s 56.1 Statement of Facts ¶ 10; Popov Decl. Ex. C. Since Lanosa was refused a ticket by Air China, Gleissner, his family, and Lanosa flew to Vienna on a European carrier instead. Pl.'s Responses to Def.'s 56.1 Statement of Facts ¶ 12.

On October 28, 2015, Gleissner sued Air China in the Civil Court of the State of New York, New York County, claiming that Air China is liable for breach of contract because it refused to issue a ticket to Lanosa. Doc. 1 Ex. A. On November 20, 2015, Air China removed the case to federal court. Doc. 1.

## II. LEGAL STANDARD

A. *Motion to Dismiss*

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201

---

[1] The Schengen Agreement is a treaty that abolished many of the European Union's internal borders, enabling passport-free movement across most of the bloc. *See Schengen Area*, EUROPEAN COMMISSION, https://ec.europa.eu/home-affairs/what-we-do/policies/borders-and-visas/schengen_en. The geographic area encompassed by the Agreement is known as the Schengen Area. *Id.* As relevant to this motion, Austria and Spain, the countries between which the Gleissner family and Lanosa were traveling, are part of the Schengen Agreement, *see Visa Policy*, EUROPEAN COMMISSION, https://ec.europa.eu/home-affairs/what-we-do/policies/borders-and-visas/visa-policy_en, and therefore they would ordinarily have been able to move between the countries without the need for visas. China, however is not part of the Agreement. Because the Air China flight on which they were booked was considered an international flight, i.e., not subject to the Schengen Agreement, Lanosa had to be processed through border control and therefore had to have a valid visa even though she was traveling between two Schengen countries. *See* Shi Jie Supp. Decl. ¶ 3. Had the trip been booked on a European carrier, Lanosa would not have needed a visa. *See* Shi Jie Supp. Decl. ¶ 7.

F.3d 110, 113 (2d Cir. 2000)). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits, to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). A district court has "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

B.  *Motion for Summary Judgment*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable

inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256–57 (1986)).

### III. DISCUSSION

A. *Rule 12(b)(1) Motion to Dismiss*

"The Foreign Sovereign Immunities Act provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (internal quotation marks omitted). "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id.* (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89 (1983)). Air China argues that the Court lacks subject matter jurisdiction in this case because it qualifies as a foreign state under the FSIA and none of the exceptions apply. Gleissner disputes both contentions. The Court concludes that Air China is not a foreign state under the FSIA.

The FSIA provides immunity from the jurisdiction of United States courts for "foreign states." *Saudi Arabia*, 507 U.S. at 351. A "foreign state" includes a political subdivision of a foreign state and an "agency or instrumentality" of a foreign state. 28 U.S.C. § 1603(a). An "agency or instrumentality" is defined as an entity

> (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and

4

(e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). A corporation does not qualify as a foreign state under the FSIA if its majority owner is another corporation, even if the parent corporation is majority-owned by an actual foreign state. As the Supreme Court has held, "[a] corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003).

When a defendant challenges the factual basis of a court's jurisdiction on a 12(b)(1) motion, the court may not deny the motion merely by assuming the truth of the facts alleged in the complaint. *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (citing *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001). The court must instead go beyond the pleadings and actually resolve the disputes of fact that stand in the way of ruling on the motion to dismiss. *APWU*, 343 F.3d at 627. In doing this, the court may refer to whatever evidence relevant to the jurisdictional question that is before the court. *Robinson*, 269 F.3d at 140.

Air China disputes the factual basis of the Court's jurisdiction, claiming to be a foreign state under the FSIA because the majority of its shares are owned by the People's Republic of China. To support that contention, Air China submits a sworn declaration by Zhihang Chi, Vice President and General Manager, North America, of Air China Limited, stating that "[t]he majority of Air China's shares are owned by the Government of the People's Republic of China." Chi Decl. ¶ 5. Gleissner argues that Air China is majority-owned by a holding company that is neither the People's Republic of China nor a political subdivision thereof; therefore, under *Dole Food*, Air China does not qualify as a foreign state under the FSIA. Gleissner submits as supporting evidence excerpts from Air China's 2015 and 2017 Annual Reports. The 2015

Annual Report includes an organizational chart that shows that an entity, simply labelled "CNAHC," owns 41.57% of Air China, and another entity that is itself 100% owned by CNAHC, "CNACG," owns 11.89% of Air China. Popov Decl. Ex. A. Consistent with that organizational chart, the 2017 Annual Report describes "China National Aviation Holding Company," or "CNAHC," to be Air China's "parent and ultimate holding company." Popov Decl. Ex. B.

On the basis of the sparse evidence submitted, and in particular the 2015 and 2017 Annual Reports—whose authenticity is not disputed by Air China—it appears that the majority of Air China's shares are owned by CNAHC and CNACG, not the People's Republic of China. Air China therefore cannot claim sovereign immunity under the FSIA under the theory that they are majority-owned by a foreign state. *Cf. In re Air Cargo Shipping Servs. Antitrust Litig.*, 2008 WL 5958061, at *39–40 (E.D.N.Y. Sept. 26, 2008), *report and recommendation adopted in part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012) (finding that South African Airways was "not an Organ, Agency or Instrumentality" of South Africa when its majority shareholder was a public holding company itself wholly owned by South Africa); *Wong ex rel. Leung Yuen Man v. The Boeing Company*, 2003 WL 22078379, at *4 (N.D. Ill. Sept. 8, 2003) (concluding that "even if China Air could make the dual showing that it was majority-owned by [the holding company], and that [the holding company] was an instrumentality" of a foreign state, it would be "insufficient to support a finding that China Air was an instrumentality" of a foreign state).[2]

If CNAHC is a political subdivision of the People's Republic of China, however, then Air

---

[2] Two district courts have found that Air China qualifies as an agency or instrumentality of a foreign state, but in both cases the plaintiff did not dispute that fact. *See Chey v. Orbitz Worldwide, Inc.*, 983 F. Supp. 2d 1219, 1228 (D. Haw. 2013); *Rubin v. Air China Ltd.*, 2011 WL 1002099, at *2 (N.D. Cal. Mar. 21, 2011).

China could nonetheless qualify as a "foreign state." 28 U.S.C. § 1603(b)(2) (identifying as a possible "foreign state" a company "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof"). But if CNAHC is instead merely an "agency or instrumentality" of the country, then Air China cannot qualify as a foreign state. *Dole Food*, 538 U.S. at 473 (affirming that "a subsidiary of an instrumentality is not itself entitled to instrumentality status"). The Court finds that CNAHC is not a political subdivision of the People's Republic of China. Courts in the Second Circuit use the "core functions" test to determine whether an entity is an organ or political subdivision of a foreign state, or just an agency or instrumentality.[3] *Garb v. Republic of Poland*, 440 F.3d 579, 594 (2d Cir. 2006). The core functions test requires the court to inquire "whether the core functions" of the subject entity "are predominantly governmental or commercial." *Id.* (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C.Cir. 1994)). The 2017 Annual Report describes CNAHC as a "holding company" and a "state-owned enterprise." Popov Decl. Ex. B. These descriptions suggest that CNAHC has primarily commercial functions, not governmental ones. Indeed, in its reply, Air China submits no evidence to the contrary and, importantly, makes no effort to apply the core functions test to CNAHC. On the basis of the evidence before it, the Court concludes that CNAHC is not a political subdivision of the People's Republic of China under the FSIA.

Because neither the People's Republic of China nor a political subdivision thereof owns the majority of shares in Air China, it does not qualify as an agency or instrumentality of a foreign state. Consequently, it is not immune from this Court's subject matter jurisdiction.

---

[3] Gleissner wrongly claims that the "legal characteristics" test, applied in *Hyatt Corporation v. Stanton*, 945 F. Supp. 675 (S.D.N.Y. 1996), is the correct test to determine this issue. The Second Circuit rejected the "legal characteristics" test in favor of the "core functions" test in *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006), ten years after *Hyatt*.

B.  *Motion for Summary Judgment*

Air China argues it is entitled to summary judgment because Lanosa's single-entry Schengen visa, which she used to enter Spain, would not entitle her to enter her destination country, Austria, and Air China retains the right to refuse carriage to a customer who lacks the requisite travel documents. Gleissner argues that Lanosa's visa would have entitled her to enter Austria because Spain and Austria are both parties to the Schengen Agreement, an international treaty which he claims allows for free travel between signatory countries.

The Court finds that no genuine dispute of material fact exists that Lanosa did not possess a valid entry visa to Austria and Air China therefore properly refused to give her a ticket. Gleissner puts forth as evidence a copy of Lanosa's single-entry Schengen visa and publicly available documents showing that Spain and Austria are both parties to the Schengen Agreement. *See* Popov Decl. Ex. E, F. But Gleissner puts forth no evidence disputing Air China's evidence that the specific flight Lanosa sought to board was an international flight requiring all passengers to be processed through border control in both Spain and Austria, despite the fact that both countries are signatories to the Schengen Agreement. *See* Pl.'s Responses to Def.'s 56.1 ¶ 7; Shi Jie Decl. ¶ 3–4; Shi Jie Supp. Decl. ¶ 3–4. As Air China has explained, the flight Lanosa sought to board required her to go through passport control at the Barcelona airport, at which point Lanosa would be considered to have exited Spain and, therefore, the Schengen zone. Shi Jie Supp. Decl. ¶ 3. A single-entry Schengen visa only allows the visa holder to enter the Schengen area once. Since Lanosa had already used her single-entry Schengen visa to enter Spain, she did not possess a visa that would allow her to enter Austria upon arrival in Vienna. Shi Jie Supp. Decl. ¶ 4. The contract between Gleissner and Air China clearly allows Air China to refuse carriage to someone if he or she lacks valid travel documents; Gleissner does not dispute this.

Chi Decl. ¶ 10–11; Chi Decl. Ex. B ¶ 7.1.7 (reserving for Air China the right to refuse carriage if a ticket holder "do[es] not appear to have valid travel documents"). Air China is thus entitled to summary judgment that no breach of contract occurred between Gleissner and Air China when Air China refused to issue Lanosa a ticket.

## IV. CONCLUSION

For the foregoing reasons, Air China's motion to dismiss is DENIED, while its motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 41, and close the case.

SO ORDERED.

Dated: March 26, 2019
      New York, New York

                                                                    Edgardo Ramos, U.S.D.J.